38 C.C.P.A.(Patents)

**Application of PETERSON.**
**Patent Appeals No. 5782.**

United States Court of Customs and Patent Appeals.

May 8, 1951.

Nielsen & Hume, Washington, D. C. (Joseph N. Nielsen, Washington, D. C., of counsel), for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting claims 9, 11, 21 to 24, inclusive, 26, and 27 of an application for a patent, serial No. 497,631, filed August 6, 1943, for new and useful improvements in an "Electrical Condenser." No claims were allowed.

The claims were held to be unpatentable over prior art as follows: Pickard, 1,479,310, Jan. 1, 1924; Kopinski, 1,952,925, March 27, 1934; Bosch (Br.), 437,429, Oct. 29, 1935; Philips (Australia), 22,223/35, Apr. 14, 1936; Bosch (A.) (Br.), 453,939, Sept. 21, 1936; Fabriek (Br.), 495,607, Nov. 16, 1938; Van Hoffen, 2,165,738, July 11, 1939; Scheer, 2,295,759, Sept. 15, 1942; Davie et al., 2,321,587, July 15, 1943.

It is not contended that any one of the involved claims is patentable over any other. Therefore, they stand or fall together.

Claim 9 is illustrative of the subject matter and reads as follows: "9. An electrostatic condenser comprising a plurality of tapes, each tape having a semi-conducting surface coextensive with its length that extends from one edge to a point of termination short of the other edge, the opposite surface of each tape being essentially non-conductive; said tapes being disposed relative to each other to present their semi-conducting surfaces against the non-conductive surfaces of the adjacent tape, respectively, so that the semi-conductive edges of alternate tapes fall upon one side of the condenser, while the semi-conductive edges of intermediate tapes fall upon the other side of the latter, the said tapes being wound together in the specified relationship to provide a coil, and a coating on each side of the coil of a semi-conducting

substance to connect electrically the semi-conducting edges respectively of the same tape."

As may be observed from the quoted claim, the alleged invention relates to electrostatic condensers which comprise sheet dielectric positioned between condenser electrodes. The application discloses condensers of the stack or roll type, the latter of which was elected for prosecution.

The condensers here involved are made in the conventional manner by rolling a pair of dielectric tapes alternately placed with tapes of conductive material for the purpose of obtaining sufficient electrode area so that a condenser of desired electrical capacity would be produced. Appellant's idea, as shown in his original specification, was the production of a simplified and economical type of condenser. His intention was to make a condenser possessing the largest possible electrical capacity that could be contained within a given structural volume and in order to accomplish that result he used the thinnest possible dielectric and conductive material placed very tightly together. The condenser was to be constructed by applying conductive material in the form of a semi-conducting film to the face of the dielectric material. The specification indicates that undesirable power losses may occur due to the specific resistance of such films. In order to avoid such losses, appellant applied the same film or coating to the end of the roll after which a plate was affixed thereto thus obtaining a connection to the entire edge of the condenser roll. In that type of structure it is said that the charging current for the innermost areas of the plate would not pass *seriatim* through other portions of the plate because no point on the condenser plate or tape would be further than the width of the strip from the point of junction with the connector.

Examples were given in the specification of conductive films such as carbon, pulverulent graphite, and aluminum powder dispersed in resin such as polysterene or polyethylene, varnish, rubber, and rubber-like compounds. The carbon is called semiconductive material.

The Pickard patent is for an electrical condenser and process for making it. A stack of mica elements are disclosed having thin coatings on the opposite sides to form the electrodes. It is said that the coatings may be applied by the spraying of molten metal, by chemical deposition of an electrolytic solution, or in the form of a paint made up of a powder in a varnish vehicle. In this connection it is stated that the coating may be made "By forming metal deposits from finely divided metal suspended in a suitable medium such as varnish on the dielectric by spraying, painting, or otherwise treating the dielectric."

The deposits of the patent are spaced from one edge of the dielectric and around the opposite edge. The coated electrodes along their entire edges, after having been stacked up, are sprayed with metal coating.

The Kopinski reference relates to a non-inductive condenser and a method of making it. The structure is made by the rolling up of paper and foil strips. The patentee stated that in such a structure it is necessary to employ extra large condensers for high frequencies by reason of inherent resistance effects. It is said the patentee learned that such condition was due to the inductance effect of the wound foils which was overcome by the flowing of solder over the whole edge of the foil thereby securing a plurality of inductive paths over the terminal into each foil. In the specification the following, with figure numbers deleted, appears: "To the ends of the foil of this condenser is applied solder * * * by means of a soldering iron * * * which is preferably electrically heated so as to better control its heat, which must be maintained between 355° F., and 365° F., and preferably at 360° F. The solder * * * has a composition of approximately 63% tin and 37% lead. When thus applied by an iron which is somewhat hotter than the melting point of the solder but which is lower than the melting point of the tin, the solder will melt and will flow into the interstices between the protruding ends of the strips of tin, as shown in Fig. 3, thereby making good electrical contact therewith." The terminals are then soldered to the ends.

The Bosch patent, 437,429, has to do with improvements relating to electrical condensers which are disclosed as comprising paper strips on one side of which a coating of powdered metal is painted or sprayed. One edge of the strip is folded over in such fashion that when two strips are rolled together so as to form the structure the turns contact each other forming plural paths into the electrode to reduce resistance of the winding. A terminal connection to the whole edge of the foil is made by means of a coating applied to each end of the condenser.

The Bosch patent, 453,939, relates to the same general subject matter as the earlier Bosch patent in that it shows a similar condenser in which the paper strips have coatings of a very high specific resistance applied to them so that if the terminals are made of inserted strips a large number would have to be employed. In order to avoid such employment, each coating is exposed at one end of the structure and coated for terminal connection along the whole edge in order to provide large current paths.

It is not necessary to discuss the Philips reference for the reason that it was applied in the rejection of claim 25 which was withdrawn in the appeal before the board.

The Fabriek reference relates to electrical condensers in which the electrodes are made of an artificial resin in which finely divided graphite or other conductive material is incorporated.

The Van Hoffen patent relates to an electrical conducting element in which conducting rubber is used as a condenser electrode in proportion of 30% rubber to 70% carbon. Graphite or metallic powder such as aluminum may be used instead of carbon as a conducting material.

The Scheer patent is for a "Capacitor." Such a device is apparently the same as an electrical condenser. It is stated in the patent that it is not desirable to spray dielectric sheets with metal for the reason that such a coating has a high resistance and is responsible for great current losses. Therefore, the patentee subjects his coatings to a heat treatment in order to reduce resistance.

The Davie et al. patent is for electrical conductive coatings, particularly those which have considerable resistence to surfaces in order to reduce the resistance thereof. The coating of the patent contains finely divided particles of electrically conductive materials such as flake metal particles in a suitable bonding medium and may be applied by spraying or the like. It is said that the coatings may be of the order of megohms (1,000,000 ohms). The resistance is said to be reduced by the patentee's method to as little as one ohm, or even less. The coatings may be applied to dielectrics which are stacked to form a plate condenser.

The Primary Examiner, in his letter finally rejecting the involved claims, stated that the basic concept of appellant's original disclosure appeared to reside in the use of connections to the longest edge of condenser electrodes so that current paths to the electrodes would be shortened and permit the use of electrodes of less conductivity. He stated that semi-conducting electrodes are usable because of the connections and are the result of a basic concept. He then declared that appellant, despite his original disclosure, was attempting to place main emphasis on "semi-conducting," which, the examiner stated, is a purely relative term without definite meaning. In his opinion appellant completely ignored well known prior art condensers wherein each of the foils projects at an edge of the condenser to secure short current paths to each foil and metal coated dielectric condensers, in which the coatings, extending to the edge of the dielectric, are connected to the common terminal for shortened currents.

The examiner noted that in the original disclosure the resistance or semi-conducting characteristic is merely incidental and is evidenced by the values of 100 ohms to several megohms, a range of 1 to 20,000. He pointed out the places in the specification where equivalency of conductors and semi-conductors are indicated, whether applied by electro-chemistry or coated by

means of a liquid coating which carries various conducting particles.

According to the examiner, the original disclosure of the conducting is an accurate description thereof. In his statement, the examiner required amendments tendered by appellant to be cancelled as constituting new, inaccurate, and misleading matter. Graphite, carbon, and aluminum were described in the requested amendments as being semi-conductive materials, whereas in the specification they are treated as equivalent conducting materials.

In answer to the argument of counsel for appellant wherein it was urged that a negative temperature coefficient resistance was characteristc of semi-conducting films, apparently due to the negative characteristics of the carbon and/or the insulated medium, the examiner said that no support for such matter appeared in the original disclosure and that its addition to it would constitute new matter. In holding that a result not originally disclosed or claimed cannot be used as a basis for patentability, he cited the case of Abbott v. Coe, 109 F.2d 449, 71 App.D.C. 195. The examiner repeated that the involved application as originally presented was directed to the securing of short current conducting paths by using a connecting coating contacting the whole edge of the condenser electrode. That, he stated, is shown in both of the Bosch references as well as in the Kopinski and Pickard patents. He held the limitation "semi-conducting" to be a relative term possessing no patentable significance.

Claims 9 and 11 were rejected as being fully met by either of the Bosch patents and further rejected on those patents in view of the Scheer or Davie et al. patents.

Claims 21 to 24, inclusive, were rejected on the same references, the patent to Pickard being employed as an alternative to either of the Bosch patents.

Claims 26 and 27 depend on claim 22 and add thereto that the semi-conducting electrode set out in claim 22 is composed of resinous material containing pulverulent semi-conducting particles of carbon, and claim 27 defines an elastomer containing pulverulent conducting particles of carbon. With respect to those claims it was pointed out that the Fabriek reference discloses a resin containing powdered graphite as a condenser electrode and the patent to Van Hoffen discloses pulverulent carbon and rubber as such an electrode.

It is trite to state that it is within the jurisdiction of the Board of Appeals to apply grounds of rejection not relied upon by the examiner. Therefore, the intimation contained in the brief for appellant that such new ground had been applied need not be considered.

As we read the decision of the board, we are of opinion that no new ground of rejection was applied by it. Since it is stated that the invention defined by the involved claims is a condenser combination of semi-conducting electrodes and intimate side edge-contacting conductor, it was held by the board that it was obvious to use those two elements together. It is clear from the record that both of the Bosch patents and the patent to Pickard disclose an intimate side edge-contacting conductor and the examiner held in his supplemental statement that the metal coatings on the devices of those patents are semi-conductors.

It appears to us to be obvious to substitute the metal coatings of those three patents with the rubber or resin loaded with graphite coating of the Fabriek reference or that of the Van Hoffen reference, which is rubber in which carbon is dispersed.

We are of opinion that an obvious combination of features appearing in the prior art negatives the exercise of the inventive faculty here. It is clear to us that if the resinous material of appellant containing carbon or other conductive particles constitutes a semi-conductor, the resinous material of the prior art which contains carbon particles is likewise a semi-conductor.

In view of what we have herein set out, we do not deem it necessary to discuss other contentions made by counsel for appellant.

The decision of the Board of Appeals is affirmed.

Affirmed.